**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST,<br><br>Plaintiff,<br><br>-against-<br><br>ELMWOOD PARK SCHOOL DISTRICT #401 and JANE DOE,<br><br>Defendants. | Civil Action No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST ("Selective"), by and through its attorneys, Litchfield Cavo LLP and Coughlin Midlige & Garland LLP, and for its Complaint against Defendants, ELMWOOD PARK SCHOOL DISTRICT #401 ("Elmwood") and JANE DOE ("Jane Doe" or "Claimant") (together, "Defendants"), states as follows:

## NATURE OF THE ACTION

1. This is an action seeking a declaratory judgment and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Defendant Elmwood has been named as a defendant in an underlying personal injury action, commenced by Defendant Jane Doe, captioned *Jane Doe v. Elmwood Park Community Unit School District 401, et al.*, venued in the Circuit Court of Cook County, Illinois County Department, Case No. 2023 L 011560 (the "Underlying Action"). In the Underlying Action, Claimant has asserted claims of willful and wanton supervision and conduct against Elmwood arising out of the alleged grooming and sexual assault of Claimant by Dallas Till ("Till") – a teacher and coach employed by Elmwood.

3. Plaintiff Selective issued seven (7) consecutive liability insurance policies (collectively, the "Selective Policies") to Educational School Insurance Cooperative ("ESIC") under which Elmwood is listed as a Named Insured. Selective has agreed, subject to a reservation of its rights, to participate in Elmwood's defense of the claims asserted against Elmwood in the Underlying Action under two of those Policies -- the '05-'06 Policy and the '06-'07 Policy, as described below.

4. In this action, Selective seeks a declaration that the claims asserted by Claimant against Elmwood in the Underlying Action are not covered under the following five (5) policies issued by Selective because the Underlying Action does not seek damages for "personal injury" or "bodily injury" that allegedly occurred during the applicable policy periods: (i) Policy No. S 1323596, effective November 1, 2002 to November 1, 2003 (the "'02-'03 Policy") (ii) Policy No. S 1323596, effective November 1, 2003 to November 1, 2004 (the "'03-'04 Policy"); (iii) Policy No. S 1323596, effective November 1, 2004 to November 1, 2005 (the "'04-'05 Policy"); (iv) No. S 1323596, effective November 1, 2007 to November 1, 2008 (the "'07-'08 Policy"); and (v) No. S 1323596, effective November 1, 2008 to November 1, 2009 (the "'08-'09 Policy").

5. Selective also seeks a declaration that, to the extent Policy No. S 1323596, effective November 1, 2005 to November 1, 2006 (the "'05-'06 Policy) and Policy No. S 1323596, effective November 1, 2006 to November 1, 2007 (the "'06-'07 Policy") are determined to afford coverage in connection with the Underlying Action, each such Policy affords a maximum of $1 million in coverage for all monetary amounts Elmwood pays or is obligated to pay in connection with its defense and resolution, whether by judgment, settlement or otherwise, of the Underlying Action and any other underlying lawsuit that implicates the given Policy's Abuse or Molestation coverage.

6. Selective also seeks a declaration that once Selective pays a certain amount it has committed to pay pursuant to the '06-'07 Policy in connection with another matter, which payment will exhaust the '06-'07 Policy's $1 million General Aggregate Limit applicable to Abuse or Molestation Coverage, Selective will have no further obligation to defend or indemnify Elmwood with respect to the Underlying Action under the '06-'07 Policy.

7. Selective also seeks a declaration that to the extent certain factual allegations in the Underlying Action are proven, Elmwood breached the Selective Policies' applicable notice condition and Selective accordingly owes no coverage in connection with the Underlying Action.

**PARTIES**

8. Plaintiff Selective is an Indiana corporation with its principal place of business located at 40 Wantage Avenue, Branchville, New Jersey 07890. Selective is authorized to transact business and has transacted business in Illinois. Selective is a citizen of Indiana and New Jersey.

9. Defendant Elmwood is an Illinois Public School District that operates K-12 schools including Elmwood Park High School ("EPHS"). EPHS is located in the Village of River Grove, Cook County, Illinois. Elmwood's principal place of business is located at 8201 West Fullerton Avenue, Elmwood Park, Illinois 60707. Elmwood is a citizen of Illinois.

10. Defendant Jane Doe is an individual who is resides in Elk Grove Village, Illinois. Selective does not seek any relief from Jane Doe, who has been joined herein as a defendant solely in order to be bound by the judgment rendered in this action. Jane Doe is a citizen of Illinois.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201-02 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy

exceeds $75,000, exclusive of interests and costs; (iii) the matter is between citizens of different states.

12. Venue is proper under 28 U.S.C. § 1391 because the Defendants are residents of this judicial district and a substantial part of the events giving rise to the claim occurred in this district.

## THE UNDERLYING ACTION

13. On or about November 13, 2023, Claimant filed a Complaint against the following defendants in the Underlying Action: (i) Elmwood; (ii) Till; (iii) J. Sterling Morton High School District 201 ("JSM"); and (iv) Elmhurst University. A copy of the Complaint filed in the Underlying Action is attached hereto as **Exhibit A**.

14. The Complaint in the Underlying Action alleges that Claimant entered EPHS as a freshman in the Fall of 2003. Claimant alleges that, during her freshman year, Till initiated inappropriate and flirtatious conversations and text messages with the Claimant.

15. Claimant further alleges that Till's relationship with her came to the attention of EPHS teachers and administrators, including Till's wife and EPHS softball coach, "Coach Erica." Claimant alleges that another EPHS teacher (referred to in the Underlying Action Complaint as "English Teacher") revealed the text messages between Claimant and Till to Coach Erica.

16. Claimant further alleges that before telling Coach Erica about the text messages, the English Teacher "publicly scolded [Claimant], called her a 'home wrecker,' and tried to counsel her about her relationship with Till, warning her to refrain from continuing a personal relationship with him."

17. Claimant alleges that Till "successfully groomed" her and that the grooming process was "so overt" that Elmwood knew or could have known through ordinary care about Till's behavior.

18. Claimant alleges that the signs of Till's improper relationship with her were "clear and unmistakable to EPHS teachers and staff and warranted investigation."

19. Claimant further alleges that, in the Spring of 2006, Till seduced her into having sexual intercourse with him, and that, over the next few months, Till "frequently sexually assaulted [Claimant]" in the EPHS building and in Till's EPHS office.

20. Claimant's Complaint asserts two causes of action against Elmwood: (i) "Willful and Wanton Supervision of Till"; and (ii) "Willful and Wanton Conduct." Both of these counts allege that Elmwood knew or should have known that Till "was grooming and sexually assaulting [Claimant] in the future based on complaints from students, his regular and inappropriate contact with students, including and especially [Claimant], and including his close physical contact with and special treatment of [Claimant] on school grounds, before and after school, and at school activities in the presence of [Elmwood] staff, students, and their parents."

21. Claimant further alleges in her Complaint that Elmwood, through its agents and/or employees, acted willfully, wantonly, and with utter indifference and conscious disregard for the supervision of its students, including Claimant, in various ways including, without limitation: (i) failing to properly evaluate Till prior to hiring him; (ii) failing to prevent Till from grooming and sexually assaulting the Claimant; and (iii) failing to respond to and investigate rumors, text messages between Till and Claimant, and other indicia of the grooming and sexual assaults that Till inflicted upon Claimant.

22. Claimant alleges that, as a direct and proximate result of Elmwood's willful and wanton acts and/or omissions, Claimant sustained damages "of a personal and pecuniary nature."

## THE SELECTIVE POLICIES

23. Selective issued seven (7) consecutive annual liability insurance policies to ESIC, under policy number S 1323596, with the first such policy incepting on November 1, 2002 and the final policy expiring on November 1, 2009. Elmwood Park School District #401 is added as a Named Insured to the Selective Policies via policy endorsement.

24. Part III of the Selective Policies contains the following General Liability insuring agreement which states, in pertinent part:

> **SECTION K: General Liability**
>
> We will only be liable for the Ultimate Net Loss in excess of the self insured retention. We will not pay more than the excess limit of liability shown on the supplemental declaration page.
>
> We agree to pay those sums the Insured must legally pay, or the Named Insured has contracted to pay, for:
>
> 1. damages, direct or consequential; and
>
> 2. expenses.
>
> Only damages and expenses defined by Ultimate Net Loss are covered.
>
> These payments cover:
>
> 1. bodily injuries or personal injuries, suffered or alleged to have been suffered. These must be caused by an occurrence during the term of this insurance […]
>
> * * * * *
>
> Our liability here is subject to the exclusions, conditions and definitions in Part III, Part IV, Common Policy Provisions, or any added endorsements.
>
> We must defend any suit against the Insured that seeks damages for personal injuries or property damage this insurance covers, even if the allegations are

groundless, false or fraudulent. We may settle any claim or suit we consider expedient.

* * * * *

25. The following definitions are applicable to Part III of the Selective Policies:

**PART III: DEFINITIONS**

**2. Bodily injury**. This means: bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time […]

**3. Personal injury**. This means injury other than 'bodily injury" arising out of:

* * * * *

b. mental anguish and humiliation

* * * * *

**6. Occurrence**. This means:

a. an accident;

b. a happening;

c. an event; or

d. continuous or repeated exposure to conditions.

These must unexpectedly or unintentionally lead to personal injury or property damage during the term of this insurance. All exposure to substantially the same general conditions of one location is one occurrence.

**7. Damages.** This means a monetary judgment, award or settlement.

**8. Expense.** This means costs incurred by the insured in the defense and settlement of claims. It does not mean wages of the insured's employees. The definition of Ultimate Net Loss explains this more fully.

**9. General Aggregate Limit**. This means the most that we will pay in any year of this insurance for damages and expenses defined by Ultimate Net Loss.

* * * * *

26. The following condition is applicable to Part III of the Selective Policies:

**An Insured's Duties If There Is An Occurrence, Claim or Suit**

An insured has certain duties if an occurrence, claim or suit is brought against an insured that:

1. may result in a claim under this policy, or

2. involves any of the following:

* * * * *

e. rape and/or serious physical assault; class action;

* * * * *

In these situations, regardless of perceived liability, an insured must notify us in writing and include:

a. reasonable information about time, place and circumstances; and

b. copies of demands, notices, summonses or other legal documents an Insured has received.

An insured must also:

a. cooperate with our investigation, settlement or defense.

b. help us, if we ask, to enforce any right against any one or any organization that may be liable to an Insured because of a covered injury or damage.

* * * * *

27. Section K – General Liability coverage is subject to certain designated each-occurrence and general aggregate limits in excess of the retained amount shown on the Schedule of Self Insured Retentions.

28. The Selective Policies also contain an "Abuse or Molestation" Policy Change Endorsement which provides that under Section K, General Liability, the General Aggregate Limit

of Liability applicable to Abuse or Molestation coverage, only, is amended to $1,000,000. The "Abuse or Molestation" endorsement further states, in pertinent part:

> It is further agreed that abuse or molestation coverage is defined as follows:
>
> 1. the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>
> 2. the negligent
>
>    a. employment;
>    b. investigation;
>    c. supervision;
>    d. reporting to the proper authorities, or failure to so report; or
>    e. retention;
>
>    of a person for whom any Insured is or ever was legally responsible and whose conduct would be excluded by paragraph 1. above.

29. The '05-'06 Policy also contains the following Schedule of Self Insured Retentions which states, in pertinent part, as follows:

**SCHEDULE OF SELF INSURED RETENTIONS**

> The SELF INSURED RETENTION amount, LOSS FUND AGGREGATE amount and MAINTENANCE DEDUCTIBLE stated herein are as follows:
>
> **$<u>100,000</u> Self Insured Retention** per occurrence or per loss from a covered cause of loss
>
> **$<u>330,000</u> Loss Fund Policy Aggregate**
>
> **$<u>1,000</u> Maintenance Deductible**
>
> In consideration of the reduced premium charged, the Company's obligation to pay for damages caused by a resulting from any occurrence or covered cause of loss is limited to the payment of that portion of the **Ultimate Net Loss** which, subject to the **Loss Fund Aggregate**, is in excess of the **Self Insured Retention** amount listed above.
>
> The **Self Insured Retention** or the Company's obligation under the applicable coverage parts shall be in excess of the **Maintenance Deductible** identified above.

The Company's duty to investigate, settle and defend claims or suits under this policy applies only after the **Ultimate Net Loss** exceeds the **Self Insured Retention**, and the **Maintenance Deductible**, if applicable. The Company shall have the right, but not the duty, to associate with you in the defense of any claim or suit for which the **Ultimate Net Loss** is likely to exceed the **Self Insured Retention**. The Company shall not be obligated to defend any claim or suit after the applicable limit of the Company's liability has been exhausted through payment of claims, settlements or judgments.

*     *     *     *     *

**DEFINITIONS**

**Self Insured Retentions (S.I.R.)**: The amount of dollars retained by the Insured for each occurrence or loss from a covered cause of loss and charged to the loss fund.

**Ultimate Net Loss:**

A. all sums which the Insured is legally obligated to pay as damages including pre- and post-judgment interest, whether by reason of adjudication or settlement because of liability to which this insurance applies, and

B. all expenses incurred by the Insured (including any third party administrator) in the investigation, negotiation, settlement or defense of claims or suits seeking such damages, excluding only the salaries of the Insured's regular employees, provided, however, that **Ultimate Net Loss** shall not include any damages or expenses or liability excluded or not otherwise covered by this policy.

**Loss Fund Policy Aggregate:** The amount of dollars retained by the Insured, which is the maximum amount to be applied for all **Self Insured Retentions**. No losses in excess of the **Self Insured Retentions** are chargeable to the loss fund. In addition, the **Self Insured Retention** is limited to the aggregate as indicated for all occurrences, persons, organizations, accidents, employees or claims. This aggregate **Self Insured Retention** applies separately to each consecutive annual period and any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declaration.

30. The above-quoted endorsement language is the same for the '06-'07 Policy, except that the Loss Fund Policy Aggregate is listed as $300,000.

31. While the Loss Fund Policy Aggregate referenced in the Schedule of Self Insured Retentions for the '06-'07 Policy has been met, it has not been met for the '05-'06 Policy.

32. By letter dated December 24, 2024, Selective agreed to participate in Elmwood's defense of the Underlying Action subject to a reservation of all of Selective's rights and defenses.

## COUNT ONE
## (Declaratory Judgment – No Coverage Under the '02-'03, '03-'04, '04-'05, '07-'08 or '08-'09 Policies)

33. Pursuant to the terms, conditions, definitions, limitations and/or exclusions of the Selective Policies, Selective seeks a determination that it has no duty to defend or indemnify Elmwood in the Underlying Action under the '02-'03, '03-'04, '04-'05, '07-'08 and '08-'09 Policies.

34. Part III, Section K – General Liability of the '02-'03, '03-'04, '04-'05, '07-'08 and '08-'09 Policies provides that Selective will "pay those sums the Insured must legally pay" for damages and expenses to which the Policy's coverage applies.

35. Further, Section K provides coverage for "bodily injury" or "personal injury" only if such injury is caused by an "occurrence" during the term of the policy. The Policies likewise require that an occurrence "must unexpectedly or unintentionally lead to personal injury or property damage ***during the term of this insurance*** (emphasis added)."

36. In the Underlying Action, it is alleged that the first incident of sexual assault committed by Till against Claimant occurred in the Spring of 2006.

37. While the Underlying Action describes certain alleged "grooming" behavior, in the form of individual attention paid and communications exchanged between Till and Claimant, which took place prior to the alleged first incident of sexual assault in Spring 2006, Claimant does not allege any "bodily injury" took place at that time.

38. Claimant further alleges that, following the alleged first incident of sexual assault in the Spring of 2006, Till continued to sexually assault Claimant in the EPHS building and in Till's EPHS office "[o]ver the course of the next several months[.]"

39. The Underlying Action also alleges that Claimant was "a member of EPHS's class of 2007."

40. Accordingly, the Underlying Action does not allege "bodily injury" or "personal injury" caused by an "occurrence" during the effective periods of any of the '02-'03, '03-'04, '04-'05, '07-'08 and/or '08-'09 Policies.

41. The Underlying Action thus creates no potential for an award of covered damages against Elmwood based upon injury Claimant allegedly sustained during the effective periods of any of the '02-'03, '03-'04, '04-'05, '07-'08 and/or '08-'09 Policies.

42. Selective is entitled to a judgment declaring that it has no obligation to defend or indemnify Elmwood in the Underlying Action under the '02-'03, '03-'04, '04-'05, '07-'08 and '08-'09 Policies.

**COUNT TWO**
**(Declaratory Judgment – Available Limits of Potential Coverage Under the '05-'06 and '06-'07 Policies)**

43. Selective seeks a declaration that the '05-'06 and '06-'07 Policies each afford a maximum of $1 million of available coverage, should such coverage apply, for all monetary amounts Elmwood pays or is obligated to pay in connection with its defense and any resolution, whether by judgment, settlement or otherwise, of the Underlying Action and any other underlying lawsuit that implicates the given Policy's Abuse or Molestation coverage.

44. The insuring agreement contained within the '05-'06 and '06-'07 Policies provides, among other things, that Selective is only liable for "the Ultimate Net Loss in excess of the self

insured retention" and "will not pay more than the excess limit of liability shown on the supplemental declaration page."

45. The '05-'06 and '06-'07 Policies each contain an "Abuse or Molestation" Endorsement which provides that under Section K – General Liability, the General Aggregate Limit of Liability applicable to Abuse or Molestation coverage is $1 million.

46. Paragraph 1 of the "Abuse or Molestation" Endorsement defines abuse or molestation coverage, in part, as the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured. The Endorsement further defines abuse or molestation coverage as the negligent employment or supervision of a person for whom any Insured is or ever was legally responsible and whose conduct would be excluded by paragraph 1.

47. The '05-'06 and '06-'07 Policies define "Ultimate Net Loss" as: (a) all sums which the Insured is legally obligated to pay as damages, and (b) all expenses incurred by the Insured in the investigation, negotiation, settlement or defense of claims or suits seeking such damages.

48. The '05-'06 and '06-'07 Policies define "General Aggregate Limit" as "the most that we will pay in any year of this insurance for damages and expenses defined by Ultimate Net Loss."

49. In the Underlying Action, Claimant alleges that she was sexually abused by Till – an employee of Elmwood – during the time when Claimant was a student at EPHS, a high school within the district of Elmwood.

50. Claimant further alleges that Elmwood breached its duty owed to Claimant, as a student of EPHS, in various respects, including by failing to prevent Till from sexually assaulting her.

51. The claims asserted by Claimant against Elmwood in the Underlying Action are premised upon conduct that falls within the scope of the Abuse or Molestation Endorsement contained within the ’05-’06 and ’06-’07 Policies and are thus subject to the $1 million General Aggregate Limit of Liability provided for therein.

52. Under each of the ’05-’06 Policy and the ’06-’07 Policy, the $1 million General Aggregate Limit applicable to Abuse or Molestation coverage is the maximum amount of coverage, if any, available in connection with the Underlying Action, as well as any other underlying lawsuit that implicates the given Policy’s Abuse or Molestation coverage, for the sum of: (1) damages Elmwood is obligated to pay, plus (2) defense expenses incurred by Elmwood.

53. Selective is therefore entitled to a judgment declaring that the maximum amount of available coverage, if any, under the Selective Policies for all monetary amounts Elmwood pays or is obligated to pay in connection with its defense and any resolution, whether by judgment, settlement or otherwise, of the Underlying Action and any other underlying lawsuit that implicates the given Policy’s Abuse or Molestation coverage, is $1 million for the ’05-’06 Policy (after Elmwood’s payment of the $300,000 Self Retained Limit) and $1 million for the ’06-’07 Policy.

## COUNT THREE

**(Declaratory Judgment – No Further Coverage Obligation Under’06-’07 Policy Upon Payment Of General Aggregate Limit For Abuse Or Molestation Claims)**

54. Selective is obligated to make a payment in connection with another matter that will fully exhaust the ’06-’07 Policy’s $1 million General Aggregate Limit applicable to Abuse or Molestation Coverage.

55. Selective is entitled to a judgment that, upon Selective’s payment referenced in Paragraph 52, which will serve to exhaust the ’06-’07 Policy’s $1 million General Aggregate Limit applicable to Abuse or Molestation Coverage, Selective will have no further obligation to defend or indemnify Elmwood with respect to the Underlying Action under the ’06-’07 Policy.

## COUNT FOUR

**(Declaratory Judgment – Failure to Satisfy the Selective Policies' "Insured's Duties If There Is An Occurrence, Claim or Suit" Condition)**

56. The Selective Policies contain a condition, applicable to Part III (the "Notice Condition"), which requires the Insured to perform certain duties in the event an occurrence, claim or suit is brought against an Insured that: (1) may result in a claim under the particular Policy; or (2) involves, among other things, rape and/or serious physical assault.

57. Pursuant to the Selective Policies' Notice Condition, the Insured must, regardless of perceived liability, notify Selective of the occurrence, claim or suit and include: (a) reasonable information about time, place and circumstances; and (b) copies of demands, notices, summonses or other legal documents an Insured has received.

58. In the Complaint in the Underlying Action, Claimant alleges that, while still a student at EPHS, Till's wife and EPHS softball coach, Coach Erica, found out about text messages between Claimant and Till.

59. Claimant also alleges in the Underlying Action that the text messages referenced in the foregoing paragraph were originally found and brought to Coach Erica's attention by "English Teacher," another teacher employed by EPHS, who "publicly scolded [Claimant], called her a 'home wrecker,' and tried to counsel her about her relationship with Till, warning her to refrain from continuing a personal relationship with him."

60. Claimant further alleges in the Underlying Action that her relationship with Till "came to the attention of additional EPHS[] teachers/administration" and that Elmwood "[f]ailed to respond to and investigate rumors, text messages between Till and [Claimant], and other indicia of the grooming and the sexual assaults that Till inflicted upon [Claimant]."

61. Accordingly, the Underlying Action alleges that Elmwood gained knowledge of an occurrence (Till's sexual assault of Claimant) that may result in a claim under one or more of the Selective Policies and/or involved "rape and/or serious physical assault."

62. To the extent the allegations of the Underlying Action referenced in Paragraphs 58-61 above are proven by Claimant and/or otherwise substantiated, Elmwood breached the Selective Policies' Notice Condition because it failed to contemporaneously notify Selective, in writing, of the information possessed by the EPHS teachers and administration regarding Till and Claimant's personal relationship .

63. Elmwood's failure to provide notice within a reasonable time to Selective of Till's sexual assault of Claimant has resulted in prejudice to Selective with regard to its ability to effectively investigate, value and/or otherwise respond to the claim.

64. Selective is therefore entitled to a judgment declaring that there is no coverage for Elmwood under the Selective Policies for the Underlying Action as a result of Elmwood's failure to satisfy the "Insured's Duties If There Is An Occurrence, Claim or Suit" condition.

**WHEREFORE**, Plaintiff, Selective Insurance Company of the Southeast, respectfully requests that the Court enter a judgment: (i) declaring that Selective has no duty to defend and/or indemnify Elmwood in the Underlying Action under the '02-'03, '03-'04, '04-'05, '07-'08 and '08-'09 Policies; (ii) declaring that the maximum amount of coverage available under the '05-'06 and '06-'07 Policies, if any, for all monetary amounts Elmwood pays or is obligated to pay in connection with its defense and any resolution of the Underlying Action and any other underlying lawsuit that implicates the given Policy's Abuse or Molestation coverage is $1 million per Policy; (iii) declaring that, upon Selective's making of the payment referenced in Count Three above, Selective has no further duty to defend or indemnify Elmwood with respect to the Underlying

Action under the '06-'07 Policy; (iv) declaring that there is no coverage for Elmwood under the Selective Policies for the Underlying Action as a result of Elmwood's failure to satisfy the Policies' "Insured's Duties If There Is An Occurrence, Claim or Suit" condition; and (v) for such other and further relief as the Court deems just and proper.

Dated: March 17, 2025

Respectfully submitted:

SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST

/s/ *Dennis M. Dolan*
Dennis M. Dolan, One of Its Attorneys

Dennis M. Dolan (6629150)
LITCHFIELD CAVO LLP
303 W. Madison Street, Suite 300
Chicago, IL 60606
Direct: (312) 781-6641
Email: Dolan@LitchfieldCavo.com

and

William T. Corbett, Jr. (033951996)
Laura A. Brady (025141993)
Coughlin Midlige & Garland LLP
350 Mount Kemble Avenue
Morristown, NJ 07962
Phone: (973) 267-0058
Email: WCorbett@cmg.law
Email: LBrady@cmg.law